IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KATHLEEN MCCULLOUGH, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 16-534 |
| | ) | |
| v. | ) | Judge Cathy Bissoon |
| | ) | |
| COUNTY OF ALLEGHENY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM AND ORDER**

### I. MEMORANDUM

On April 29, 2016, Plaintiff Kathleen McCullough ("Plaintiff") filed a Complaint asserting various constitutional and state law claims against an array of politicians, government officials, businesspeople and attorneys. (Comp. (Doc. 1)). On August 2, 2016, McCullough amended her complaint to add several new Defendants. (Am. Comp. (Doc. 43)). As discussed in detail below, the allegations in the Amended Complaint arise out of three criminal prosecutions involving Plaintiff. In the Cherup Matter, Plaintiff was charged and found guilty of theft from her employer, Radiance Out Patient Surgery Center, owned by Lori Cherup, MD. In the Mackin Matter, Plaintiff was charged with and found guilty of theft from another employer, Mackin Engineering. Finally, in the Jordan Matter, Plaintiff was charged with, but acquitted of, theft, and conspiring with her brother, Allegheny County Councilman Charles McCullough ("Mr. McCullough"), to steal from his client, Shirley Jordan ("Ms. Jordan"), a 90 year old widow.

1

Plaintiff's six-count Amended Complaint alleges violations of 42 U.S.C. §§ 1983, 1985, and 1986 based on conspiracy (Count I); the Due Process Clause under the Fourteenth Amendment (Count II); and state tort claims for Malicious Prosecution, Abuse of Process, Intentional Infliction of Emotional Distress, and Breach of Contract (Counts III through VI).[1] (See generally Doc. 43). Plaintiff brings claims against the following entities and individuals: Allegheny County, County Executive Richard Fitzgerald, former County Executive Dan Onorato (collectively, the "County Defendants"), PNC Financial Corporation ("PNC"), Rea Miller, Thomas Gray, Lana Boehm (collectively, the "PNC employees"), The Law Firm of Eddy, DeLuca, Gravina & Townsend, Wayne DeLuca, Steve Townsend, James DePasquale (collectively, the "Attorney Defendants"), the Allegheny County District Attorney's Office ("DA's Office), Joseph Todd Moses ("Detective Moses"), and District Attorney Stephen Zappala ("DA Zappala") (collectively, the "DA Defendants"). (Doc. 43 ¶¶ 2-15).

All Defendants have filed Motions to Dismiss the Amended Complaint (Docs. 62, 64, 71, 73, and 77). Although the Court granted Plaintiff several extensions of time to respond to these Motions, she failed to meet the extended deadlines, and to date, has not filed any response to the Motions. (See Doc. 76 (granting Plaintiff an extension until October 30, 2016 to respond to Defendants' Motions); Doc. 81 (granting Plaintiff an extension until November 14, 2016 to respond to the Attorney Defendants' Motion)).[2] Accordingly, the Court will adjudicate the merits of the Defendants' Motions without the benefit of Plaintiff's response. For the reasons

---

[1] Plaintiff's Amended Complaint states that Counts I-V are brought against all Defendants, while Count VI (Breach of Contract) is brought only against Defendants PNC, Miller, Gray, and Boehm. Plaintiff also mentions violations of the Fourth, Fifth, and Ninth Amendments, as well as a state law claim of retaliation. (Doc. 43 ¶ 75). However, these claims are not included in Plaintiff's enumerated Counts, nor does she attempt to allege causes of action based on these alleged violations anywhere else in the Amended Complaint.

[2] It should be noted that Plaintiff did file other motions in the intervening period.

2

discussed below, the Court will grant Defendants' Motions to Dismiss (Docs. 62, 64, 71, 73, and 77), and dismiss this case with prejudice.

## A. BACKGROUND[3]

On April 13, 2007, Dennis Roddy, a reporter for the Pittsburgh Post Gazette, wrote and published an article concerning Mr. McCullough and his handling of Ms. Jordan's financial affairs as her Power of Attorney and the co-trustee of Ms. Jordan's trust. (Doc. 43 ¶ 22). The article prompted an investigation into Mr. McCullough's conduct, led in part by co-defendant Detective Moses, who, in May and July 2007, interviewed three PNC employees, Defendants Gray, Miller, and Boehm. (Doc. 43, Ex. 2 (Miller Interview), Ex. 8 (Gray Interview), Ex. 10 (Boehm Interview), Ex. 12 (Gray Re-interview)).[4] According to the "Supplemental Reports" attached to the Amended Complaint, Attorney Wayne DeLuca represented PNC Employees Gray and Boehm at two of these interviews. (Doc. 43 ¶ 59, Exs. 10, 12). As set forth in the Supplemental Reports, the PNC employees discussed with investigators their concerns regarding Mr. McCullough's handling of the Trust, as well as their refusal to consent to the transactions he proposed, ultimately resulting in Mr. McCullough revoking the Trust under his Power of Attorney and transferring the assets to Northwest Savings Bank in January 2006. (See generally, Doc. 43, Exs. 2, 8, 10, 12). In addition, Plaintiff claims that the PNC employees "provided false evidence concerning Plaintiff" during their interviews with investigators. (Doc. 43 ¶¶ 56, 74).

---

[3] The following background facts are taken from Plaintiff's Amended Complaint (Doc. 43). Because the case presently is before this Court on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true all allegations in the Amended Complaint and all reasonable inferences that can be drawn therefrom. See Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989). In addition, the Court views all well pled factual averments and reasonable inferences in the light most favorable to the non-moving party. Id.

[4] PNC served for a period of time as co-trustee of Ms. Jordan's Trust along with Mr. McCullough. (See generally, Doc. 43, Exs. 2, 8, 10, 12).

3

Specifically, Plaintiff claims that PNC employees Miller and Boehm falsely identified Plaintiff as an employee of Northwest Savings Bank based upon the "false hearsay of Boehm." (Doc. 43, p. 3; id. at ¶¶ 56, 59, 74). Plaintiff also alleges that Miller and Boehm told investigators that Plaintiff charged Ms. Jordan an "extremely high rate" for companion services – $60 per hour – despite the fact that Plaintiff is "not a nurse." (Doc. 43 ¶ 57). Plaintiff further alleges that Attorney DeLuca (who represented PNC and its employees in the Jordan Matter) provided emails between Mr. McCullough and the PNC employees to the District Attorney's Office in May 2007. (Doc. 43 ¶¶ 29(c), 61, Ex. 11).

On May 2, 2008, nearly a year after the PNC employees were interviewed regarding the Jordan Matter, Plaintiff was arrested and charged in an unrelated matter involving her criminal theft from her former employer, Dr. Lori Cherup ("Cherup Matter"). (See Cherup Criminal Docket (Doc. 64-6)).[5] Both Attorney DeLuca and his law partner, Attorney Townsend, represented Plaintiff in connection with the Cherup Matter. (Doc. 43 at pp. 26-27, Exs. 26 & 27). On February 19, 2009, after an eight-month Grand Jury investigation, the DA's Office issued a criminal complaint against both Plaintiff and her brother for criminal theft and conspiracy related to their dealings with Ms. Jordan ("Jordan Matter"). (Doc. 43 at pp. 2, 26,

---

[5] Because Plaintiff's claims implicate the procedural history of her underlying criminal cases, and because the description of the procedural history in the Amended Complaint is incomplete in some respects, this Court has also consulted the dockets in Plaintiff's criminal cases, matters of public record which may be considered on a motion to dismiss, and which Plaintiff herself references in the Amended Complaint. See Pension Benefit Guar. Corp. v. White Consol. Indus ., Inc., 998 F.2d 1192, 1197 (3d Cir. 1993) (holding matters of public record a court may consider on a motion to dismiss "include criminal case dispositions such as convictions or mistrials"); Morozin v. Johnson, 2011 WL 5837146, at *1–2 & n. 2 (E.D. Pa. Nov. 18, 2011) (considering document reflecting fact of defendant's guilty plea on a motion to dismiss); Simpson v. City of Coatesville, 2010 WL 3155307, at *5 & n. 3 (E.D. Pa. July 28, 2010) (considering the docket in plaintiff's state court criminal case in evaluating a motion to dismiss plaintiff's § 1983 claims); Clean Harbors, Inc. v. ACSTAR Ins. Co., 2010 WL 1930579, at *2 n. 7 (D.N.J. May 12, 2010) (observing docket entries in a publicly filed civil action are matters of public record that a court may consider in evaluating a motion to dismiss).

¶ 36, Ex. 25). On the same date, Plaintiff was charged in a separate criminal complaint for criminal theft from yet another employer, Mackin Engineering ("Mackin Matter"). (Mackin Criminal Docket (Doc. 64-7)). Plaintiff once again retained Attorney Townsend to represent her in the Jordan and Mackin Matters. (Doc. 43 ¶ 37). However, less than a year later, on January 11, 2010, Plaintiff terminated the services of Attorney Townsend in all three matters, citing a purported "fundamental egregious conflict of interest" given Attorney DeLuca's representation of the PNC employees in the Jordan Matter. (Doc. 43 ¶ 38 and Ex. 36). Plaintiff ultimately sought new counsel in the three criminal proceedings pending against her – later retaining Attorney Christy Foreman in the Jordan Matter and Attorney DePasquale in the Cherup and Mackin Matters. (Doc. 43 ¶¶ 39, 46, 68-69 and Ex. 15).

On June 1, 2010, Plaintiff was convicted of theft in both the Cherup and Mackin Matters. (Doc. 43, Ex. 28; see also Doc. 64-6; Doc. 64-7). On April 1, 2013, Plaintiff filed a Post Conviction Relief Act ("PCRA") petition in the Court of Common Pleas (Doc. 64-12), which was denied in January 2016. (Docs. 64-6 and 64-7). With regard to the Jordan Matter, on March 28, 2012, the trial court denied Plaintiff's Motion to Dismiss, finding that the Commonwealth had shown sufficient probable cause that Plaintiff had committed the crimes of theft and conspiracy. That decision was later affirmed by the Superior Court of Pennsylvania on February 27, 2014. Commonwealth of Pennsylvania v. McCullough, 86 A.3d 896 (Pa. Super. 2014). On June 10, 2015, at the close of the Commonwealth's presentation in the Jordan Matter, the trial court acquitted Plaintiff of the charges against her. (Doc. 43 ¶ 45 and Ex. 18). One month later, in July 2015, Mr. McCullough was found guilty of five third-degree felony theft charges and five second-degree misdemeanor charges of misapplication of entrusted property. (Jordan Criminal Docket (Doc. 64-9)).

In her Amended Complaint, Plaintiff maintains that the County Defendants conspired with the DA's Office to prosecute her in the Jordan Matter in retaliation for her brother's political activities. Specifically, Plaintiff asserts that between January 2008 and January 2009, Mr. McCullough made several statements to the press and engaged in litigation adverse to Allegheny County, including seeking a preliminary injunction enjoining the alleged misuse of excess drink tax revenues and bringing a lawsuit challenging the legality of "Walking Around Money" that allegedly led to the adoption of a resolution ending the use of such funds. (Doc. 43 ¶¶ 25-26, 31-34, 64-66). Plaintiff alleges that, when former Allegheny County Chief Executive Dan Onorato was asked about these litigations in a January 14, 2009 interview, he leveled a "threat" against Mr. McCullough. (Doc. 43 ¶¶ 35, 67, 73, 119 and Ex. 13 at Tr. 5:17-6:7). Plaintiff claims that Mr. Onorato later engaged in "political payback" by influencing the DA's Office to arrest and prosecute Plaintiff and her brother. (Doc. 43 ¶¶ 67, 74, 119). Plaintiff further claims that the various Defendants conspired to violate her due process rights in order to protect PNC and its employees from prosecution. (Doc. 43 p. 3, 28-30; id. at ¶¶ 37, 63, 74, 107). Plaintiff alleges that DA Zappala "permitted his employees, Joseph Todd Moses and others[,] to perpetrate this intentional collusion and this intentional conspiracy . . . to deny Plaintiff all of her civil rights." (Doc. 43 at p. 27).

Although the Amended Complaint is difficult to follow (to say the least), Plaintiff seems to allege that the following facts, among others, support her claims of conspiracy and due process violations:

- That her attorneys, Mr. DePasquale and Ms. Foreman, stated to her that they believed the Jordan prosecution was "politically motivated." (Doc. 43 ¶¶ 39, 46, 68-69).
- That the DA's Office did not indict and prosecute any PNC employees regarding their conduct related to Ms. Jordan's trust (Doc. 43 ¶¶ 40, 47);

6

- That Attorney DeLuca and Defendant Moses are friends with Italo Mackin, the victim in the Mackin Matter (Doc. 43 at pp. 3, 30-32);

- That Mr. Mackin purportedly provided financial support to Dan Onorato. (Doc. 43 ¶ 76);

- That Mr. Onorato is friends with Mr. Zappala's uncle (Doc. 43 at p. 30);

- That in January 2012, nearly three years after Plaintiff was charged in the Jordan Matter, Detective Moses was hired by PNC as a VP/Senior Manager and that he did not leave his position as a County detective until two months later. (Doc. 43 ¶¶ 41, 109 and Ex. 21);

- That in March 2015, the DA's Office offered Plaintiff and Mr. McCullough a plea agreement under which "Plaintiff would have to execute an agreement that [she] would not sue, for the two felony count charges, to be dropped against her" and that she believes "this deal would have protected not only the County of Allegheny but also PNC and its employees." (Doc. 43 ¶¶ 43, 70, 113, 138); and

- That on September 25, 2015, some five years after her convictions in the Mackin and Cherup Matters, Attorney DePasquale (who represented her in those matters) appeared as a Commonwealth witness at a hearing on Plaintiff's motion to obtain transcripts of grand jury testimony, and allegedly falsely testified that Plaintiff "stole" from his office file materials from those cases, without his knowledge or permission. (Doc. 43 at pp. 28-29).

**B. STANDARD OF REVIEW**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When faced with a motion to dismiss, a court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

In analyzing this Motion, the Court may consider documents attached to the Amended Complaint, as well as documents not physically attached thereto "if they are referred to in plaintiff's complaint and are central to the claim." Santomenno ex rel. John Hancock Trust v. John Hancock Life Ins. Co, 768 F.3d 284, 290-91 (3d Cir. 2014). The Court also may consider matters of public record. Burkhart v. Knepper, 310 F. Supp. 2d 734, 741-42 (W.D. Pa. 2004).

7

## C. ANALYSIS

### 1. **Plaintiff's Constitutional Claims (Counts I and II) Are Time-Barred.**

In Counts I and II of the Amended Complaint, Plaintiff claims that Defendants conspired to violate her due process rights under the Fourteenth Amendment of the United States Constitution.[6] Among other things, Defendants argue that Counts I and II should be dismissed as time-barred. The Court agrees with Defendants, and will dismiss Counts I and II of the Amended Complaint with prejudice.

As Defendants argue, claims brought pursuant to Sections 1983 and 1985 are subject to Pennsylvania's two-year statute of limitations for personal injury actions. See 42 Pa. Cons. Stat. Ann. § 5524; Retter v. Douglas, 2014 WL 992834, at *7 (W.D. Pa. Mar. 13, 2014) (applying 42 Pa. C.S. § 5524 to Section 1983 claim); Garland v. U.S. Airways Inc., 270 Fed. App'x 99, 103 (3d Cir. 2008) (applying 42 Pa. C.S. § 5524 to Section 1985 claim); Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 194 n. 24 (3d Cir. 2009) (applying 42 Pa. C.S. § 5524 to due process claim). Claims brought pursuant to Section 1986 are limited to "one year after the cause of action has accrued." 42 U.S.C. § 1986; Ormsby v. Luzerne Cty. Dep't of Pub. Welfare Office of Human Servs., 149 F. App'x 60, 62 (3d Cir. 2005) (citing Cito v. Bridgewater Twp. Police Dept., 892 F.2d 23, 25 (3d Cir. 1989)). A cause of action accrues when the plaintiff knows or has reason to know of the injury that constitutes the basis of the cause of action. Sameric Corp. of Delaware, Inc. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998).

---

[6] Count II of the Amended Complaint asserts a violation of Plaintiff's due process rights under the Fourteenth Amendment. To seek relief under the United States Constitution, a plaintiff must bring a claim under Section 1983 and cannot assert claims for relief under the United States Constitution directly. Livadas v. Bradshaw, 512 U.S. 107, 132 (1994); Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906–07 (3d Cir.1997) ("By itself, Section 1983 does not create any rights, but provides a remedy for violations of those rights created by the Constitution or federal law."). Accordingly, the Court will construe Count II of the Amended Complaint as stating a cause of action under Section 1983.

Because Plaintiff filed her Complaint on April 29, 2016, her claims under Sections 1983 and 1985 must arise out of events taking place on or after April 29, 2014 (or, for claims under Section 1986, on or after April 29, 2015). A plain reading of Plaintiff's Amended Complaint, however, demonstrates that her Section 1983, 1985 and 1986 claims largely arise out of events that took place well before those dates. Specifically, Plaintiff relies on the following allegations to support her conspiracy and due process claims at Counts I and II:

- that PNC employees provided "false" information about Plaintiff in interviews to Detective Moses from May through July of 2007 (over 9 years ago);
- that the DA's Office collected a few emails involving Mr. McCullough from Attorney DeLuca in May 2007 (over 9 years ago);
- that Detective Moses arrested Plaintiff without probable cause in the Cherup Matter on May 2, 2008 (over 8 years ago);
- that Dan Onorato allegedly threatened her brother in January 2009 (approximately 8 years ago);
- that Detective Moses arrested her without probable cause in the Jordan and Mackin Matters on February 19, 2009 (approximately 8 years ago);
- that Plaintiff terminated Defendants DeLuca and Townsend due to their "egregious" conflict of interest on January 11, 2010 (approximately 7 years ago); and
- that Detective Moses was hired by PNC in January 2012 (approximately 5 years ago).

Indeed, the only allegations in the Amended Complaint that fall within the statute of limitations are those related to the DA's plea negotiations with Plaintiff in March 2015 and Attorney DePasquale's alleged false testimony during hearings to obtain grand jury transcripts in September 2015. However, neither of these actions can possibly give rise to a viable claim under Sections 1983, 1985 and 1986. First, to the extent that DA Zappala authorized the plea proffer in March 2015, he is protected by the doctrine of absolute prosecutorial immunity. Moretti v. Seilhammer, 2008 WL 282469, at *1 (W.D. Pa. Jan. 31, 2008) ("[A] prosecutor's decision whether to dispose of a case by plea bargain—because dependent on delicate judgements

9

affecting the course of a prosecution—is protected by the doctrine of absolute prosecutorial immunity") (citing Davis v. Grusemeyer, 996 F.2d 617, 629 (3d Cir. 1993)). Similarly, Attorney DePasquale is absolutely immune and cannot be held liable for allegedly giving false testimony at the September 2015 hearing. Dixon v. Elmore, 2012 WL 5830629, at *8 (W.D. Pa. 2012) ("It is well settled that witnesses are absolutely immune from suit for testifying . . . even if that testimony is false."); Briscoe v. LaHue, 460 U.S. 325, 345 (1983) (witness who testified in criminal trial had absolute immunity with respect to any claim based on the witness's testimony, even if the testimony was false). Furthermore, Plaintiff cannot argue that these later events "relate back" to the prior events for purposes of extending the statute of limitations period, as she was "required to seek redress for each act of the alleged conspiracy causing injury within two years of its occurrence." See Kost v. Kozakiewicz, 1 F.3d 176, 191 (3d Cir. 1993); Lokuta v. Sallemi, 2013 WL 5570227, at *20 (M.D. Pa. Oct. 9, 2013) ("In the Third Circuit, the statute of limitations on a § 1983 conspiracy claim begins to run from the commission of each overt act causing injury.")

Recognizing that her claims are untimely, Plaintiff argues in her Amended Complaint that the statute of limitations should be tolled until May 2016, when she received from her former counsel, Ms. Foreman, a copy of her file in the Jordan Matter, which included Exhibit 25, *i.e.*, a witness list for testimony before the grand jury on July 31, 2008. Plaintiff claims that this one-page witness list proves that the DA Defendants and the Attorney Defendants conspired to violate her due process rights because it "irrefutably proves that the Mackin/Jordan grand jury commenced 58 days after DeLuca accepted her case." (Doc. 43, pp. 40-41). Pennsylvania law recognizes that "'in some circumstances, although the right to institute suit may arise, a party may not, despite the exercise of due diligence, reasonably discover that he has been injured.'"

10

Haugh v. Allstate Ins. Co., 322 F.3d 227, 231 (3d Cir. 2003) (quoting Crouse v. Cyclops Industries, 560 Pa. 394, 745 A.2d 606, 611 (2000)). In such cases, the discovery rule will serve to toll "the running of the applicable statute of limitations until the point where the complaining party knows or reasonably should know that [s]he has been injured and that [her] injury has been caused by another party's conduct." Crouse, 745 A.2d at 611. Plaintiff can derive no benefit from this rule, however, as she certainly was on notice of the injuries she alleges in her Amended Complaint well before she filed suit. Indeed, in her April 1, 2013 PCRA Petition, Plaintiff alleged the very same conspiracy and due process violations that she alleges in the Amended Complaint. (See Doc. 64-12 at 9-11, 78-79 (alleging a conflict based on her defense attorney's prior representation of PNC employees); id. at 31 (describing Dennis Roddy's article and Mr. McCullough's alleged political activities and stating that her "arrest was purely political"); id. at 32 (alleging that Detective Moses's hiring by PNC was a "possibly pay for play situation with the Jordan case, because PNC Bank employees Gray and Boehm are represented by the same 'organized crime' lawyer Wayne DeLuca, and Moses is the lead detective . . ."); id. (alleging that Detective Moses's father "was a close friend to Mackin"); id. at 35 (alleging that Detective Moses was "more concerned in protecting his interests in obtaining a PNC Bank position than seeking justice"); id. at 43 (same); id. at 46 ("I contend this conspiracy started with the District Attorney's Office namely DA Zappala, ADAs Claus and Becker, Detectives Moses and Flannigan, conspired with defense attorneys organized crime attorney DeLuca, and DePasquale, DeLuca's stooge Steve Townsend . . .").

Plaintiff also seems to argue that the statute of limitations should be equitably tolled due to her status as a *pro se* litigant. (Doc. 43 at p. 41). However, Plaintiff's *pro se* status does not, in itself, qualify as an extraordinary circumstance warranting equitable tolling. Hedges v. United

11

States, 404 F.3d 744, 751-53 (3d Cir. 2005) (explaining that "[e]quitable tolling is an extraordinary remedy which should be extended only sparingly" and that "a pro se plaintiff's 'misconception about the operation of the statute of limitations' was 'neither extraordinary nor a circumstance external to his control' sufficient to warrant equitable tolling.") (citing United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004)).

In short, the Court finds no grounds for tolling the statute of limitations in this case. Because Plaintiff discovered her alleged injury and the facts giving rise to her claims relating to her 2009 charges in the Jordan Case well over two years before she filed this action on April 29, 2016, her Section 1983, 1985 and 1986 claims arising out of that prosecution are time-barred. See Burch v. Pa. Bd. of Probation & Parole, 2010 WL 1133336, at *5 (W.D. Pa. Mar. 19, 2010) (dismissing Section 1983 and various state law claims as time-barred).[7] Accordingly, and because amendment of time-barred claims would be futile, the Court will dismiss these claims with prejudice. See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008) ("[I]n the event a complaint fails to state a claim, unless amendment would be futile, the District Court must give the plaintiff the opportunity to amend her complaint.") (citing Shane v. Fauver, 213 F.3d 113, 116 (3d Cir. 2000)).

---

[7] Because the Court finds that Counts I and II are time-barred, it does not reach Defendants' alternative arguments that these claims should be dismissed on other grounds, including: that Plaintiff fails to allege any facts showing a conspiracy among the Defendants to deprive her of her due process rights; that the PNC Defendants and the Attorney Defendant are not state actors, and thus did not act under the "color of state law" for purposes of Section 1983 liability; that the County Defendants and the DA Defendants are qualifiedly and/or absolutely immune from suit for actions taken in the course of their professional duties; and that Plaintiff's Section 1985 and 1986 claims fail because Plaintiff does not allege that she belongs to a protected class. Although the Court does not rely on these arguments in dismissing Counts I and II, it notes that, upon its preliminary review, these arguments appear to have substantial merit and certainly could result in the dismissal of these claims even if they were timely filed.

## 2. Plaintiff's State Law Claims Fail As A Matter of Law.

For the reasons stated below, the Court also will dismiss Plaintiff's state law claims (Counts III through VI) with prejudice.

Plaintiff's abuse of process and IIED claims (Counts IV and V), like Plaintiff's Section 1983 and 1985 claims, are barred by the two-year statute of limitations. See 42 Pa. C.S. § 5524(1) (abuse of process claims are subject to the two-year statute of limitations); Rose v. Bartle, 871 F.2d 331, 350 (3d Cir. 1989) (abuse of process claim accrues on date of arrest); Garvin v. City of Phila., 354 F.3d 215, 220 (3d Cir. 2003) (applying the two year statute of limitations in 42 Pa.C.S. § 5524(7) to IIED claim). Like her constitutional claims, the events that form the basis of Plaintiff's abuse of process and IIED claims all took place long before April 29, 2014. (See, e.g., Doc. 43 ¶ 123 ("Plaintiff maintains all Defendants intentionally used the legal process to harm her," presumably by arresting her in the Jordan Matter in February 2009); id. at ¶ 123 ("Moses even was rewarded with a new career with PNC [in 2012]."); id. at ¶ 128 (asserting that the events that resulted in her claim for IIED "start[ed] with Onorato's political retaliation due to his thwarted $12 million drink tax issues and the denial of private access to another $80 million in WAM finds [between 2008 and 2009]"); id. at ¶ 129 (claiming that the Defendants made comments to "demean" Plaintiff, including arresting Plaintiff and her brother in front of "news cameras" and refusing to assist Plaintiff's mother to obtain bond for her release, presumably in February 2009).

Plaintiff's breach of contract claim (Count VI) against PNC and its employees also is time-barred. The applicable statute of limitations for contract claims in Pennsylvania is four years. 42 Pa.C.S. § 5525(8). However, the allegations that form the basis for Plaintiff's contract claim—i.e., that Defendant Gray promised to assist Plaintiff in finding employment in July 2006,

that Defendant Gray provided Plaintiff with a key to Ms. Jordan's home in August 2006, and that the Defendant PNC employees provided "false evidence against Plaintiff" in their interviews to law enforcement in May 2007, see Doc. 43 ¶¶ 137-140)—all took place before April 29, 2012.

Finally, while not time-barred, Plaintiff is collaterally estopped from bringing a malicious prosecution claim against Defendants arising out of her prosecution in the Jordan Matter (Count III). In order to bring such a claim, Plaintiff must allege that the Defendants initiated the proceeding without probable cause. See Kossler v. Crisanti, 564 F.3d 181, 186 and n.2 (3d Cir. 2009) (en banc). As discussed above, the state court has already considered, and ruled against Plaintiff, on that issue. See McCullough, 86 A.3d at 898 (explaining that the court's "scope of review is limited to deciding whether a prima facie case was established," *i.e.*, whether the Commonwealth has shown "sufficient probable cause that the defendant committed the offense, and the evidence should be such that if presented at trial, and accepted as true, the judge would be warranted in allowing the case to go to the jury.") (citing Commonwealth v. Landis, 48 A.3d 432, 444 (Pa. Super. 2012) (emphasis added); id. at 899 ("[W]e find the Commonwealth sufficiently established the element of intent such that a prima facie case against McCullough for the crime of theft by unlawful taking was made."); id at 900 ("We agree with the Commonwealth that Mr. McCullough's apparently deceptive actions to obtain a seemingly inflated rate of income for his sister at least renders the appearance of the formation of a criminal confederation, and the relationship between the parties raises the inference of a shared criminal intent. Therefore, given our standard of review of a prima facie case, we find no error in the trial court's refusal to dismiss the conspiracy charge."). Because the state court already found that there was probable cause to prosecute Plaintiff for both the theft and conspiracy charges brought against her in the Jordan Matter, her malicious prosecution claim, too, is barred as a matter of law. See

14

Heilman v. T.W. Ponessa And Assoc., 2009 WL 82707, at *3 (3d Cir. Jan. 14, 2009) (dismissing malicious prosecution claim because collateral estoppel barred relitigating probable cause to revoke probation where appellate court previously affirmed trial court's finding on that issue).

Because Plaintiff cannot cure the deficiencies in Counts III through VI of the Amended Complaint, any amendment would be futile and the Court will dismiss these claims with prejudice.

## II. ORDER

For the reasons stated above, Defendants' Motions to Dismiss (Docs. 62, 64, 71, 73, and 77) are GRANTED. Consistent with the foregoing, the Court hereby DISMISSES this case with prejudice.

IT IS SO ORDERED.

February 16, 2017                                           s/Cathy Bissoon
                                                                                                                    Cathy Bissoon
                                                                                                                    United States District Judge

CC (via ECF email notification):

All Counsel of Record

(via First Class U.S Mail):

**KATHLEEN MCCULLOUGH**
107 Fairway Landings Drive
Canonsburg, PA 15317